UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL LUKS, | ) 1:09CV2751 |
| | ) |
| Petitioner | ) JUDGE JACK ZOUHARY |
| | ) (Magistrate Judge Kenneth S. McHargh) |
| v. | ) |
| | ) |
| BENNIE KELLY, | ) |
| | ) |
| Respondent | ) REPORT AND |
| | ) RECOMMENDATION |

McHARGH, MAG. J.

The petitioner Michael Luks ("Luks") has filed a petition for a writ of habeas

corpus through counsel, arising out of his 2007 conviction for multiple counts of

rape, gross sexual imposition, and kidnapping, in the Cuyahoga County (Ohio)

Court of Common Pleas.  In his petition, Luks raises three grounds for relief:

> 1.  The State charged Petitioner using "carbon copy indictments" that
> were not amended until the end of the State's case-in-chief.  This
> deprived him of fair notice of the charges and an adequate opportunity
> to prepare a defense and subjected him to the risk of double jeopardy,
> in violation of the Fifth, Sixth, and Fourteenth Amendments to the
> United States Constitution.

> 2.  Petitioner was denied access to transcripts of the grand jury
> proceedings from his case.  He had a particularized need for the
> transcripts.  The multiple, "carbon copy indictments" meant that
> without the transcripts, he had no way of knowing the full nature of
> charges against him and could not prepare a defense.  The court's
> denial of his motion violated his rights under the Sixth and Fourteenth
> Amendments to the United States Constitution.

1

3.  Mr. Luks' trial counsel provided ineffective assistance, in violation
of the Sixth and Fourteenth Amendments, by failing to impeach
witnesses with their prior inconsistent statements, failing to move to
strike inflammatory and prejudicial material from the record, failing to
request a redaction of prejudicial journal pages entered into evidence,
failing to request a handwriting expert in regards to the journals,
failing to request a "drug addict" jury instruction, and failing to put
forth a defense during the sexual offender hearing.

(Doc. 1, at § 12.)


## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural

background:

The Cuyahoga County Grand Jury indicted Luks in a 110-count
indictment for rape, gross sexual imposition, and kidnapping, arising
from his unlawful sexual acts with his two juvenile nieces.  Luks
entered a plea of not guilty; the matter proceeded to a jury trial.

### Jury Trial
At the time of trial, the victims were 18 and 13 years old.  [FN2]  They
were ten and under when the abuse occurred.  Two older nieces also
testified regarding Luks; however, the charges pending against Luks
did not involve them.  [FN3] The victims testified that Luks abused
them over a period of years in the home they shared with him.  Luks
would offer them candy in exchange for sexual acts, which consisted of
him touching them and performing oral sex on them and they on him.

FN2.  It is the policy of this court to not name victims of
sexual abuse.  Therefore, we will refer to the 18-year old
victim as Victim I, and the 13-year old victim as Victim II.

FN3.  The trial was a joint trial against Luks and the
children's father Patrick Luks.  The charges against
Patrick Luks were dismissed after the State's
case-in-chief.

2

The victims' parents are alcoholics and have ten children between them.  The family was constantly moving to different states and within Ohio to escape the various child service agencies that were investigating claims of abuse and neglect of the children.

In 1996, the family moved in with the paternal grandmother, where Luks also lived.  Between 1996 and 1999, the family repeatedly moved to and from this house in an attempt to evade Cuyahoga County Children and Family Services ("CCDFS"), which had become involved with the family because of reports of neglect and abuse.

In January 2005, the minor children were placed in their paternal aunt's custody because their parents refused to comply with the case plan developed by CCDFS.  While in the aunt's custody, Victim I told her aunt that Luks had sexually abused her.  The aunt refused to report the abuse to authorities.  She also continued to allow the grandmother to babysit the children at the grandmother's house where Luks also resided.

Victim I testified that she discovered Victim II's journal in which she alluded to the uncle abusing her.  Victim I decided to take action to prevent further abuse of her younger siblings and called the child abuse hotline.  As a result, the children were removed from their aunt's custody and placed with foster families.

After presenting its case-in-chief, the State dismissed all but ten counts against Luks, consisting of four counts of rape, one count of gross sexual imposition, and three counts of kidnapping, occurring between January 24, 1996 and January 23,1999 against Victim I; and one count each of gross sexual imposition and kidnapping against Victim II during August 2000.

The jury found Luks guilty of all ten counts.  The trial court sentenced Luks to four statutorily mandated life-sentences for the rape convictions, five years for the gross sexual imposition counts, and ten years for the kidnapping counts.  The court ordered the rape and kidnapping counts to be served concurrently but consecutive to the five years for gross sexual imposition.  The trial court also found Luks to be a habitual sex offender.

(Doc. 13, RX 9, at 1-3; State v. Luks, No. 89869, 2008 WL 3126177, at *1-*2 (Ohio Ct. App. Aug. 7, 2008).)

In his direct appeal, Luks raised six assignments of error:

1.  The convictions violate the Sixth and Fourteenth Amendments of the federal Constitution.  Valentine v. Konteh, 395 F.3d 626 (6th Cir. 2005), In re Oliver, 333 U.S. 257 (1948) and the charging method employed by the State denied the appellant fair notice of the charges against him and denied him adequate opportunity to prepare his defense.

2. Counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution when counsel failed to act as an advocate and abandoned the appellant.

3.  The court should have granted appellant's motion for disclosure of Grand Jury testimony filed May 8, 2006.

4.  The appellant's right to a statutory speedy trial and whether the statute of limitations was violated.

5.  The verdicts for Rape with force or threat of force must be vacated as it relates to force or threat of force because it is impossible to determine whether the jury was unanimous in finding either force or threat of force and the finding had to be unanimous as to either element in order for the Court to impose a life sentence.  Otherwise, the verdicts for Rape violate the Sixth and Fourteenth Amendments of the federal Constitution.

6.  The cumulative errors denied the appellant of a fair trial and sentencing hearing in violation of the Fourteenth Amendment of the federal Constitution.

(Doc. 13, RX 7.)  The court of appeals affirmed the judgment of the trial court.  (Doc.

13, RX 9; State v. Luks, No. 89869, 2008 WL 3126177 (Ohio Ct. App. Aug. 7, 2008).)

Lukes filed a timely appeal to the Supreme Court of Ohio, and set forth four

propositions of law:

1.  When the State uses "carbon copy indictments" and does not amend the indictments until the end of its case-in-chief, it unreasonably subjects the defendant to the risk of double jeopardy and deprives the defendant of fair notice of the charges against him prior to trial and

the opportunity to prepare a defense.  This use of "carbon copy indictments" violates the defendant's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.  Valentine v. Konteh (6th Cir. 2005), 395 F.3d 626, In re Oliver (1948), 333 U.S. 257, 68 S. Ct. 499.

2.  When there is no physical evidence and an indictment contains numerous "carbon copy" counts, grand jury testimony is the only means for advising the accused of the full nature of charges against him or preparing a defense.  This constitutes a particularized need, and overruling the motion for disclosure of the grand jury testimony violates the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

3.  When counsel fails to act as an advocate and abandons the defendant, counsel is ineffective under the Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I of the Ohio Constitution.

4.  When cumulative errors deny the appellant a fair trial and sentencing hearing it is in violation of the Fourteenth Amendment of the United States Constitution.

(Doc. 13, RX 11.)  On Feb. 4, 2009, the state high court denied leave to appeal, and

dismissed the appeal as not involving any substantial constitutional question.  (Doc.

13, RX 12; State v. Luks, 120 Ohio St.3d 1505, 900 N.E.2d 623 (2009).)

Luks filed this petition for a writ of habeas corpus on Nov. 24, 2009.  (Doc. 1.)


## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

5

respect to any claim which was adjudicated on the merits by a state court.  The

Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291

F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court

precedent "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v.

Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court

considers the state decision to be erroneous or incorrect.  Rather, the federal court

must determine that the state court decision is an objectively unreasonable

application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Several of the arguments put forward by Luks implicate alleged violations of

Ohio law.  The question before this federal habeas court is whether the state court

6

decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of the state constitution or Ohio law is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

## III.  INDICTMENTS

The first ground of the petition is:

The State charged Petitioner using "carbon copy indictments" that were not amended until the end of the State's case-in-chief.  This deprived him of fair notice of the charges and an adequate opportunity to prepare a defense and subjected him to the risk of double jeopardy, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

(Doc. 1, at § 12.)

The state court of appeals addressed this claim as follows:

The Ohio Supreme Court has held that "the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges."  The Court explained, "a certain degree of inexactitude of averments, where they relate to matters other than the elements of the offense, is not per se impermissible or necessarily fatal to a prosecution."  However, the State must supply specific dates and times regarding an alleged offense when it possesses such information.

This court has previously noted that the State may be unable to supply exact times and dates in cases involving victims who are young children.  We explained that young children may not be able to remember exact dates, especially when the crimes involve several instances of abuse spread out over an extended period of time.  In such cases, the prosecution must set forth a time frame in the indictment

7

and charge the accused with offenses which reasonably fall within that period.

According to Victim I, the sexual abuse occurred on numerous occasions over the course of several years.  There is no evidence indicating the State possessed specific dates or times the abuse occurred, or that specific dates were ascertainable, given the pervasive nature of the conduct alleged.  However, the State set forth a time range of 1996 to 1999 for the crimes against Victim I.  Victim II was able to estimate, based on the fact she was home for summer vacation, that the abuse against her occurred during August of 2000.

Luks contends the failure to set forth a more specific time range violated his right to due process and cites to the federal Sixth Circuit case Valentine v. Konteh [395 F.3d 626 (6th Cir. 2005)] in support of his argument. The court in Valentine acknowledged that "fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements."  The court stressed the problem in that case was not "the fact that the prosecution did not provide the defendant with exact times and places. * * * Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made."

In Valentine, the defendant was indicted for 40 counts of sexual abuse. The court found Valentine's right to due process was violated because the counts were not connected to distinguishable incidents.  In so holding, the court focused on the fact that there was no factual basis for the 40 separate incidents contained in the indictment, the bill of particulars, or the testimony at trial.  At trial, the victim in Valentine described the typical abuse scenarios and estimated the number of times the abusive offenses occurred.  The court held that this prevented the jury from considering each count because they were not connected to distinguishable events, and deprived the defendant protection against double jeopardy.

In fact, the Valentine court held that "the due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial."

The instant case is distinguishable. In our case, the State dismissed the bulk of the indictments, presumably because they could not link

those counts to specific events. The remaining counts were ones that
the victims specifically recalled in detail.

(Doc. 13, RX 9; Luks, 2008 WL 3126177, at *2-*3 (internal citations omitted).)

The court went on to provide specific examples of the testimony of "Victim I,"
concluding that her testimony supported the convictions on four counts of rape, one
count of gross sexual imposition, and three counts of kidnapping, and found that
Luks "was not convicted based on vague, general allegations of abuse like the
defendant in Valentine."  (Doc. 13, RX 9; Luks, 2008 WL 3126177, at *4.)

The court also reviewed the trial testimony of "Victim II," and found that her
testimony "supports the kidnapping and gross sexual imposition charges against
Luks regarding Victim II."  (Doc. 13, RX 9; Luks, 2008 WL 3126177, at *4.)

Finally, the state court noted that, unlike the defendant in Valentine who
claimed to have alibi defenses for a large number of dates, "Luks' defense centered
upon his denial the acts in question ever occurred, regardless of when the acts were
alleged to have occurred."  Thus, Luks was not prejudiced by the omission of specific
dates and times.  (Doc. 13, RX 9; Luks, 2008 WL 3126177, at *4.)

Before this court, Luks argues that his claim should prevail under Valentine,
and the state court's determination to the contrary was unreasonable.  (Doc. 18, at
4.)  Of course, the standard for review is whether the state court decision "involved
an unreasonable application of . . . clearly established Federal law, as determined
by the Supreme Court of the United States."  Williams, 529 U.S. at 412-413
(emphasis added).  The Supreme Court has clarified that the source of "clearly

9

established federal law" is limited to the holdings of the U.S. Supreme Court.  Id. at 412.

The U.S. Supreme Court has stated that, generally, "the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings."  Knewel v. Egan, 268 U.S. 442, 446 (1925).  The main Constitutional issue is whether the indictment provides the defendant with sufficient information of the charged offense, to enable him to defend himself against the accusations.  Roe v. Baker, 316 F.3d 557, 570 (6th Cir. 2002), cert. denied, 540 U.S. 853 (2003).  See also Cole v. Arkansas, 333 U.S. 196, 201 (1948); Hartman v. Lee, 283 F.3d 190, 195 n.5 (4th Cir. 2002), cert. denied, 537 U.S. 1114 (2003).  "Any other deficiencies in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding."  Roe, 316 F.3d at 570 (quoting Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986)).

In Valentine, the court relied on Russell v. United States, which set forth the constitutional due process requirements for the sufficiency of an indictment:

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet," ' and, secondly, " 'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' "

Valentine v. Konteh, 395 F.3d 626, 630-631 (6th Cir. 2005) (quoting Russell v. United States, 369 U.S. 749, 763-764 (1962)).  Valentine stated that an indictment is only constitutionally sufficient if it "(1) contains the elements of the charged

offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy." Valentine, 395 F.3d at 631.

The defendant in Valentine was convicted of 40 counts of sexual abuse. Valentine, 395 F.3d at 628.  The Sixth Circuit found it problematic that, within these counts, there were "absolutely no distinctions made." Id. at 632.  The prosecution did not attempt to lay out separate factual bases for each incident, neither in its charges, nor in its evidence before the jury.  Id.  "The only evidence as to the number of offenses was provided by the testimony of the child victim, who . . . estimated the number of times the abusive offenses occurred, e.g., 'about 20,' 'about 15' or 'about 10' times." Id. at 628.

The Valentine court noted, however, that the due process problems in the indictment itself "might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial." Valentine, 395 F.3d at 634.  The court found that the Constitution requires "some minimal differentiation between the counts at some point in the proceeding." Id. at 638; see also Egler v. Brunsman, No. 3:09CV2163, 2010 WL 5463808, at *3 (N.D. Ohio Dec. 29, 2010) (only minimal differentiation required, not exact time, date or place specifications).

In support of his claim, Luks argues that the evidence at trial did not distinguish the separate counts.  Even with most of the counts dismissed, Luks claims there was still not enough specificity to allow him to defend himself:  "the State gave no actual dates on which the alleged actions were to have taken place."

11

(Doc. 1, Addendum, at 3; see also doc. 18, at 10 (state did not provide specific dates for offenses).)  See generally Geboy v. Brigano, 489 F.3d 752, 762 (6th Cir. 2007) (under Ohio law, precise dates and time are not elements of charged offense, thus need not be set forth in indictment); Valentine, 395 F.3d at 632 (fairly large time windows in child abuse cases not in conflict with notice requirements).

The respondent points out that the state court of appeals found that the testimony presented in this case was sufficient to differentiate between the various charges and resulting convictions.  (Doc. 13, at 16.)  The trial court dismissed several counts for which no evidence was presented, and limited the charges presented to the jury to those supported by the evidence presented at trial.  Id.

Luks contests the state court's finding that there was evidence to support charges and convictions on the remaining counts.  (Doc. 18, at 10-13.)  However, the constitutional issue in this context is whether there was "differentiation between the counts at some point in the proceeding."  See, e.g., Valentine, 395 F.3d at 638. The Sixth Circuit has implied that alleged due process problems in the indictment can be cured where the prosecution delineates the factual bases for the allegations "either before or during the trial."  Valentine, 395 F.3d at 634, 638.  Under Ohio law, "the State generally may amend an indictment or bill of particulars, even after trial for the purpose of conforming to the evidence, so long as 'no change is made in the name or identity of the crime charged.'"  Geboy, 489 F.3d at 762 (quoting Ohio Crim. R. 7(D)).  Luks presents no Supreme Court precedent to the contrary.  Luks has not established that the state court's determination in this case was contrary to,

12

or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

Luks also argues: "Although prosecutors are given wider discretion in charging a sex offense case because the children are usually incapable of remembering exact dates, it should also trigger greater specificity in other parts of the indictment as a balance." (Doc. 18, at 13.)  This argument is not supported with any Supreme Court precedent.

As to the "risk of double jeopardy" component of the first ground, Luks failed to raise this issue in the court of appeals.[1]  Luks only raised the indictment's alleged flaws as an issue of fair notice of the charges, and an inadequate opportunity to prepare a defense.  (Doc. 13, RX 7, at 3-5.)  For a claim to be properly exhausted for this court's consideration, the claim must have been presented to the state courts under the same theory in which it is later presented in federal court.  Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998).

The petition should not be granted on the basis of the first ground.  Luks has not established that the state court's determination concerning the indictment was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

---

[1] Although Luks attempted to raise the double jeopardy aspect in his appeal to the state high court (doc. 13, RX 11), the Supreme Court of Ohio will not consider a constitutional question which was not raised and argued in the lower courts. Leroy v. Marshall, 757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); State v. Phillips, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971).

## IV.  GRAND JURY TRANSCRIPTS

The second ground of the petition is:

> Petitioner was denied access to transcripts of the grand jury
> proceedings from his case.  He had a particularized need for the
> transcripts.  The multiple, "carbon copy indictments" meant that
> without the transcripts, he had no way of knowing the full nature of
> charges against him and could not prepare a defense.  The court's
> denial of his motion violated his rights under the Sixth and Fourteenth
> Amendments to the United States Constitution.

(Doc. 1, at § 12.)

The state court addressed this claim, finding that Luks had failed to

demonstrate a particularized need for the grand jury transcripts.  (Doc. 13, RX 9;

Luks, 2008 WL 3126177, at *6-*7.)

Luks has withdrawn this claim.  (Doc. 18, at 15.)


## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

The third ground of the petition is:

> Mr. Luks' trial counsel provided ineffective assistance, in violation of
> the Sixth and Fourteenth Amendments, by failing to impeach
> witnesses with their prior inconsistent statements, failing to move to
> strike inflammatory and prejudicial material from the record, failing to
> request a redaction of prejudicial journal pages entered into evidence,
> failing to request a handwriting expert in regards to the journals,
> failing to request a "drug addict" jury instruction, and failing to put
> forth a defense during the sexual offender hearing.

(Doc. 1, at § 12.)

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is

the right to effective assistance of counsel."  Joshua v. DeWitt, 341 F.3d 430, 437

14

(6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).

The Sixth Circuit discussed the general standard for ineffective assistance of

counsel in Monzo v. Edwards:

> To establish ineffective assistance of counsel under Strickland, the
> defendant must show that his counsel's performance fell below an
> objective standard of reasonableness and that his counsel's errors were
> so serious as to prejudice the defendant.  Review of counsel's
> performance is highly deferential and requires that courts "indulge a
> strong presumption that counsel's conduct falls within a wide range of
> reasonable professional assistance."  To establish prejudice, the
> defendant "must show that there is a reasonable probability that, but
> for counsel's unprofessional errors, the result of the proceeding would
> have been different.  A reasonable probability is a probability sufficient
> to undermine confidence in the outcome."

Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002) (internal citations omitted).

See generally Strickland v. Washington, 466 U.S. 668, 689 (1984) (two-part test).

In the habeas context, this court considers petitioner's ineffective assistance

claim "within the more limited assessment of whether the state court's application

of Strickland to the facts of this case was objectively unreasonable."  Washington v.

Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000).  The appellate court addressed this

claim applying the two-part test set forth in Strickland, therefore this court must

determine whether the state court's application of Strickland was objectively

unreasonable.

The state court addressed the claims as follows:

> We review a claim of ineffective assistance of counsel under the
> two-part test set forth in Strickland v. Washington.  Under Strickland,
> a reviewing court will not deem counsel's performance ineffective
> unless a defendant can show his lawyer's performance fell below an
> objective standard of reasonable representation and that prejudice

15

arose from the lawyer's deficient performance.  To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.  Judicial scrutiny of a lawyer's performance must be highly deferential.

(1) Failure to cross-examine Victim I.
Luks claims his counsel was ineffective for failing to cross-examine Victim I about her prior inconsistent written statement.  He contends the entire case rested on Victim I's credibility; therefore, cross-examination was crucial to his defense.  He also claims counsel was ineffective for failing to preserve the prior inconsistent statement under seal for appellate court review.

We conclude that Luks was not prejudiced by his attorney's failure to cross-examine Victim I regarding her inconsistent statements contained within her written statement.  Victim I readily admitted that she failed to previously tell various family service agencies about the abuse when they inquired whether she was sexually abused.  Therefore, the fact she was not consistent about the abuse was known by the jury.  Moreover, her older sister testified to witnessing some of the acts committed by Luks against the victim; this corroborated the victim's allegations of abuse.

(2) Sexual predator hearing.
Luks claims that his counsel was ineffective because he failed to advocate on his behalf at his sexual predator hearing.  His counsel simply argued that Luks maintained his innocence.

Luks has failed to show how he was prejudiced by his counsel's alleged lack of effectiveness at his sexual predator hearing.  We note that the trial court did not classify Luks as a sexual predator as he maintains, but classified him as a habitual offender.

Moreover, Luks has been sentenced to a mandatory life sentence.  Therefore, it is unlikely that he will ever have to register.  Even in the unlikely event he should be let out of prison, he will be subject to Senate Bill 10, effective January 1, 2008 (The Adam Walsh Act).  Under S.B. 10, Luks will automatically be reclassified as a "Tier III" offender based solely on the rape offenses he committed.  Therefore, Luks' argument is moot.

(3) Sentencing.

16

Luks contends counsel was ineffective because he failed to argue on his behalf for a lesser sentence. Instead, the attorney merely reiterated Luks' claim that he was innocent. However, because Luks was sentenced to a mandatory life sentence pursuant to R.C. 2907.02(B), he was not prejudiced by his attorney's failure to set forth an argument.

(4) Closing argument.

Luks contends his counsel was ineffective for failing to request an outburst by the victims' sister during closing argument be stricken and for failing to request the court to instruct the jury to disregard the outburst.

During defendant's closing argument, the victims' sister shouted, "Bull f---ing s-t. F-k you. They f---ing did that s-t. F-k this court." Counsel did not request the court to strike the outburst or instruct the jury to disregard the outburst. However, the trial court instructed the jury as follows:

"In closing arguments counsel will set forth and develop theories and conclusions which they believe may reasonably be drawn from all the evidence of the case. Opening statements and closing arguments of counsel are permitted to assist the jury to understand and reach conclusions about issues which the jury is to decide. You are instructed that opening statements and closing arguments do not constitute evidence in this case, and they shall not be considered by the jury."

A jury is presumed to follow the trial court's instructions; therefore, counsel's inaction was not prejudicial.

(5) Journal.

Luks argues counsel was ineffective for failing to request a redaction of Victim II's journal. The journal only contains five written pages. The bulk of the journal contains Victim II's thoughts of unhappiness with her dysfunctional family and desire to have a role model she can look up to. This was harmless information.

In fact, Victim II never described Luks' abuse. Instead she made vague references to the fact that her aunt was taking Luks' side and that the reason the victim "did not tell anybody is because I didn't want to get involved." She also stated that her uncle belongs in jail. She never explicitly stated that she was abused. Based on the minimal amount of information in the journal, Luks was not prejudiced by the admission of the journal in its entirety.

17

Luks also argues counsel should have requested a handwriting expert because the journal contains different types of writing.  However, at trial the victim was cross-examined by counsel regarding the different types of writing in the journal.  Defense counsel also had the victim give a writing sample to compare to the journal.  Thus, the jury was apprised of the different styles of handwriting.

(6) Jury instruction.
Luks argues that his counsel was ineffective for failing to request a "drug addict" jury instruction concerning the State's witnesses who were chronic users of alcohol and drugs.  Luks' counsel had throughly cross-examined the witnesses regarding their drug and alcohol usage.

In addition, Victim II admitted she abused drugs, associated with disreputable people, and frequently ran away from home.  Moreover, the victim's grandmother and aunt both testified to Victim II's drug addiction.  Therefore, the jury was aware of her drug problem and shady past.  The court instructed the jury that they were the sole judges of the witnesses' credibility and that in determining the credibility they should consider all facts and circumstances surrounding the testimony of the witnesses that would "add or detract from the credibility and weight of the witness's testimony."  The witnesses' drug abuse would be a circumstance considered by the jury.  An additional instruction would have been superfluous.

(7) Jury verdict forms.
Luks argues his counsel was ineffective for failing to request a verdict form that delineated the use of force and threatened use of force.  However, for reasons set forth in our discussion of Luks' fifth assigned error, counsel was not ineffective for failing to request the verdict form.  Accordingly, Luks' second assigned error is overruled.

(Doc. 13, RX 9; Luks, 2008 WL 3126177, at *4-*6 (internal citations omitted).)

## A.  Failure to properly cross-examine

On appeal, Luks argued that "several witnesses, including the alleged victims, made prior inconsistent statements.  Nonetheless, counsel failed to use these inconsistent statements to test the credibility of the witnesses."  (Doc. 13, RX 7, at 5.)

18

Luks disputes the appellate court's statement that "Victim I readily admitted that she failed to previously tell various family service agencies about the abuse when they inquired whether she was sexually abused.  Therefore, the fact she was not consistent about the abuse was known by the jury." (Doc. 18, at 17; doc. 13, RX 9; Luks, 2008 WL 3126177, at *4.)  Luks protests that:

> These statements are incorrect. Victim I did admit that she failed to tell Iowa social workers about the abuse — she claimed that she could not recall if they had asked her about it.  She did not readily admit lying to social services.

(Doc. 18, at 18.)  Luks would also find a lie in the victim's statement that she told family members about the abuse:  "It is unlikely that she would report the abuse to her family but would be unwilling to tell the authorities."  Id.  Luks appears to equate inconsistency with a lie.

Luks contends that trial counsel's performance was objectively unreasonable, because no reasonable attorney would forgo the opportunity to impeach a key witness with evidence demonstrating that the testimony was false.  (Doc. 18, at 20.)

Luks asserts that counsel could not have presented a complete defense without cross-examining the witnesses regarding their prior inconsistent statements.  (Doc. 18, at 19.)  Luks argues that trial counsel's performance was objectively unreasonable, and the facts do not support the state court's ruling on ineffective assistance.  Therefore, Luks contends, the state court's decision to the contrary "was an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d)(2)."  (Doc. 18, at 19.)

19

The factual findings[2] made by the state courts are presumed correct, and the presumption of correctness may be rebutted by the petitioner only with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See, e.g., Lorraine, 291 F.3d at 422; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998), cert. denied, 527 U.S. 1040 (1999).  Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and that presumption of correctness extends to factual findings of a state appellate court based on the state trial record.  Bowling v. Parker, 344 F.3d 487, 497 (6th Cir. 2003), cert. denied, 543 U.S. 842 (2004) (citing Sumner v. Mata, 449 U.S. 539, 546-47 (1981)).  The presumption was designed to relieve federal courts of the necessity of relitigating factual issues concerning federal rights claimed by a habeas petitioner when such factual determinations have already been made by the state court at trial where the defendant had adequate opportunity to present evidence.  United States ex rel. Preston v. Mancusi, 422 F.2d 940, 943 (2d Cir. 1970); Maxwell v. Turner, 411 F.2d 805, 807 (10th Cir. 1969).

In Wiggins v. Smith, for example, the petitioner had established that the lower court had based a conclusion, in part, on a clear factual error.  Wiggins v.

_____

    [2]  "Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors."  Mann v. Jones, No. 06-2209, 2009 WL 2461090, at *5 (6th Cir. Aug. 12, 2009).  Some courts unfortunately confuse the two sections, for example, by relying on Williams v. Taylor, 529 U.S. 362 (2000), to interpret Section 2254(d)(2).  The Supreme Court in Williams was explicitly interpreting the meaning of Section 2254(d)(1), not (d)(2).  See, e.g., Williams, 529 U.S. at 367, 412.

20

Smith, 539 U.S. 510, 528-529 (2003).  The lower court had found that relevant social service records included incidents of sexual abuse, when in fact "the records contain no mention of sexual abuse."  The court found that the state court's assumption that the records documented evidence of abuse was shown to be incorrect by "clear and convincing evidence."  Id.

In contrast, Luks attempts to establish that the state court's ruling, concerning trial counsel's alleged failure to follow a particular avenue of cross-examination of the victim in a sexual abuse case, "was an unreasonable determination of the facts in light of the evidence."  (Doc. 18, at 19.)  This court cannot characterize issues such as the appellate court's ruling on ineffectiveness of counsel as "factual determinations."  Assuming for the sake of argument that they are factual determinations, Luks has failed to present clear and convincing evidence to rebut the presumption of correctness.

The question before the court is not whether counsel's performance fell short under Strickland, but rather whether the state court's determination (finding that counsel's actions did not constitute ineffective assistance) is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Hodge v. Haeberlin, 579 F.3d 627, 642 (6th Cir. 2009), cert. denied, 130 S.Ct. 2107 (2010).  Under Strickland, review of counsel's performance is highly deferential.  Monzo, 281 F.3d at 579.  The state court found that Luks was not prejudiced by the failure to cross-examine "Victim I" regarding inconsistent statements contained in a written

21

statement.  The court does not find that the state court's application of Strickland on this issue was objectively unreasonable.  Washington, 228 F.3d at 702.

## B.  Failure to strike inflammatory material

During defendant's closing argument, the sister of the victims made a brief, emotional outburst.  Luks' argument on appeal was:  "The outburst of Ms. Luks should not have been ignored by Counsel or the Court.  Counsel should have requested that the comment be stricken and that the jury be instructed to disregard the outburst.  It was not evidence that should have been considered by the jury." (Doc. 13, RX 7, at 8.)  The appellate court found that the trial court's general instruction that assertions at closing argument were not evidence to be considered by the jury was sufficient, and counsel's inaction was not prejudicial.  (Doc. 13, RX 9; Luks, 2008 WL 3126177, at *5.)

Luks contends that the trial court's instructions "may have even led the jury to think that they could consider the outburst as evidence."  (Doc. 18, at 21.)  Luks argues that, because "argument" was not evidence, then "if it [the outburst] was not part of the argument, it must be evidence."  Id. at 22.  Luks' rather fanciful theory continues:

> In the alternative, if the outburst was not evidence, it was part of the closing arguments.  It could not have been part of the defense's argument, so it must have been part of the State's argument.  But the State did not have the right to speak at that point . . .

(Doc. 18, at 22.)  This court is highly skeptical that any juror would consider an emotional outburst from the gallery to be either evidence for consideration by the jury, or a part of either side's closing argument.

In any event, Luks again argues that the state court's determination that counsel's decision not to focus on the outburst was not prejudicial is "an unreasonable determination of the facts in light of the evidence."  (Doc. 18, at 23.) The court is even less inclined to find the appellate court's ruling on this aspect of the ineffectiveness issue as a "factual determination."  It is certainly arguable that defense counsel might have asked for an instruction on the outburst.  However, Luks has not established that the state court's application of Strickland  on this issue was objectively unreasonable.

### C.  Failures concerning  journal entered into evidence

On appeal, Luks contended that counsel was ineffective for not seeking a redaction of "irrelevant and prejudicial writings in [a victim's] journal that do not relate to the charges in the indictment."  (Doc. 13, RX 7, at 8.)  In addition, counsel should have requested a handwriting expert to analyze the journal to determine whether all of it was authored by the same person.  Id.

The state court noted that the journal only consisted of five pages, and the bulk of it "contains Victim II's thoughts of unhappiness with her dysfunctional family and desire to have a role model she can look up to.  This was harmless information."  (Doc. 13, RX 9; Luks, 2008 WL 3126177, at *5.)  The court noted that the journal never described the alleged abuse.  Id.  In addition, the court pointed

23

out that the victim was cross-examined on the differing types of writing in the journal.  (Doc. 13, RX 9; Luks, 2008 WL 3126177, at *6.)

Luks again argues that the court's decision is "an unreasonable determination of the facts," because the journal contained prejudicial material. (Doc. 18, at 27.)  He argues that, if the journal does not refer to the abuse, it has no relevancy and should have been objected to.  Id.  As to the failure to call a handwriting expert, "the critical issue is defense counsel's failure to request an expert who would have prepared the jury to evaluate the different styles."  Id. at 28.

The court finds that Luks has not established that the state court's application of Strickland  was objectively unreasonable.

### D.  Failure to request a "drug addict" instruction

Luks argued on appeal that counsel was ineffective for failing to request a "drug addict" instruction concerning those state witnesses who were addicts or chronic users of alcohol and illegal drugs.  (Doc. 13, RX 7, at 9, citing United States v. Combs, 369 F.3d 925 (6th Cir. 2004).)

The court of appeals noted that "Luks' counsel had throughly cross-examined the witnesses regarding their drug and alcohol usage."  Also, the court pointed out that "Victim II admitted she abused drugs, associated with disreputable people, and frequently ran away from home."  There was other testimony to her drug addiction, and the court found that the jury was "aware of her drug problem and shady past." The trial court instructed the jury on witness credibility, and that the jury "should consider all facts and circumstances surrounding the testimony of the witnesses

24

that would add or detract from the credibility and weight of the witness's testimony."  (Doc. 13, RX 9; Luks, 2008 WL 3126177, at *6.)

Luks asserts that the court's ruling was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  (Doc. 18, at 31.)  Luks argues that, because counsel failed to request the special instruction, Luks was prejudiced because the jury was unable to properly evaluate the credibility of the witnesses.  Id.

While Luks contends that the Sixth Circuit has recognized the importance of a drug-addict instruction "in appropriate cases," he concedes that there is no per se rule requiring such an instruction.  (Doc. 18, at 29.)  In fact, in Combs, the Sixth Circuit pointed out that there is less need for such an instruction "where the jury is aware that the witness is an addict and where there was substantial corroboration for the witness's testimony."  United States v. Combs, 369 F.3d 925, 939 (6th Cir. 2004) (citing United States v. McGhee, 882 F.2d 1095, 1100 (6th Cir. 1989)).  Here, the state court noted that the jury had ample awareness of the witnesses' drug and alcohol usage.  The court's implicit finding, that counsel's performance did not fall below an objective standard of effective representation in failing to request such an instruction, is not unreasonable.

The court finds that Luks has not established that the state court's application of Strickland  was objectively unreasonable.

### E.  Failure to put forth defense during sexual offender hearing

25

Finally, Luks argued on appeal that the court of appeals should "vacate the Sexual Predator finding," because counsel had abandoned his duty to his client, by being "present in name only" at the relevant hearing.  (Doc. 13, RX 7, at 7.)

The court of appeals noted that "the trial court did not classify Luks as a sexual predator as he maintains, but classified him as a habitual offender."  (Doc. 13, RX 9; Luks, 2008 WL 3126177, at *5.)  The court also pointed out that, because Luks had been sentenced to a mandatory life sentence, "it is unlikely that he will ever have to register."

The respondent asserts that the state court reasonably applied Strickland to this, and all the ineffective assistance claims.  (Doc. 13, at 23-27.)  Luks does not contest this claim in his Traverse.  See generally doc. 18, at 17-33.

### F.  Summary of ineffective assistance of counsel claims

The petition should not be granted on the basis of the third ground.  The question before this court is not whether counsel's performance fell short under Strickland, but rather whether the state court's determination (finding that counsel's actions did not constitute ineffective assistance) is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Hodge, 579 F.3d at 642; Washington, 228 F.3d at 702.

The court finds that Luks has not established that the state court's determinations concerning ineffective assistance of counsel involved an unreasonable application of clearly established federal law, as determined by the Supreme Court in Strickland.

26

## VI.  SUMMARY

The petition for a writ of habeas corpus should be denied.

The petition should not be granted on the basis of the first ground, because Luks has not established that the state court's determination concerning the indictment was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  As to third ground, Luks has not established that the state court's determinations concerning ineffective assistance of counsel involved an unreasonable application of clearly established federal law.

Luks has withdrawn his second claim, concerning the grand jury transcripts.


## RECOMMENDATION

It is recommended that petition for a writ of habeas corpus should be denied.


Dated:  Apr. 22, 2011                    /s/ Kenneth S. McHargh
                                       Kenneth S. McHargh
                                       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).